UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

KAREN GREENWALD,

    Plaintiff,　　　　　　　　　　DEMAND FOR JURY TRIAL

-vs-　　　　　　　　　　　　　　　Case No.
　　　　　　　　　　　　　　　　　Hon.

KINGS MILL COOPERATIVE,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Karen Greenwald, by and through undersigned counsel, and sues the Defendant KINGS MILL COOPERATIVE, and states as follows:

## INTRODUCTION

1. This is a civil action brought pursuant to the Fair Housing Act (hereinafter "FHA"), 42 U.S.C. § 3601, stemming from KINGS MILL COOPERATIVE's violations of the FHA by unlawfully discriminating against KAREN GREENWALD, a person with disabilities. KINGS MILL COOPERATIVE violated the FHA by refusing to make reasonable accommodations to its rules, policies, practices, or services, when such an accommodation is necessary to afford Plaintiff an equal opportunity to use and enjoy her dwelling, and by threatening, harassing, and intimidating Plaintiff because she exercised her Fair Housing Act rights.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

3. Venue is proper in the Eastern District of Michigan, under 28 U.S.C. §1391(b) because Plaintiff's claims arose in this judicial district.

4. Plaintiff, KAREN GREENWALD, (hereinafter "GREENWALD"), a Wayne County resident, is a person with a disability who owns and resides at Defendant, KINGS MILL COOPERATIVE (hereinafter "KINGSMILL"), is a Michigan nonprofit corporation, with its principle address in Wayne County, Michigan, which is responsible for administering and governing its housing complex pursuant to its Articles of Incorporation, Declaration of Co-operative and By-Laws, and its Rules and Regulations.

5. KINGSMILL implemented and enforced a discriminatory denial of an accommodation to GREENWALD with actual knowledge or reckless disregard of the illegality of such acts.

6. Upon information and belief, KINGSMILL has a pattern of discriminating against persons with disabilities by threatening disabled residents that have requested accommodations, and delaying and/or denying reasonable accommodations that are needed by disabled residents.

## GENERAL ALLEGATIONS

7. The housing units at KINGSMILL are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(h), FHA and as such, are subject to the anti-discrimination provisions of the FHA.

8. GREENWALD suffers from Severe Recurrent Major Depressive Disorder, major depression severe and major anxiety severe, and Post Traumatic Stress Disorder. GREENWALD'S impairments substantially limit one or more of her major life activities. Accordingly, GREENWALD has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

9. In order to have equal use and enjoyment of her home, it is imperative that GREENWALD has the ability to live with her service dog, "Clyde," as an service animal because he provides service that ameliorates the impacts of her disabilities.

10. When the Plaintiff moved in to KINGSMILL, she provided actual notice to KINGSMILL that Clyde was a service animal and not merely a "pet."

11. On or about May 13, 2014, KINGSMILL sent the Plaintiff a letter stating that it had received two complaints that Clyde was running loose on the premises.

12. Clyde was never running loose on the premises and the allegation that he was doing so was false.

13. The May 13, 2014 letter from KINGSMILL to the Plaintiff did not contain any documentation of the alleged complaint, nor did it disclose the name or names of any person who claimed to have seen Clyde running loose.

14. Upon information and belief, no one ever contacted KINGSMILL with any credible information that Clyde was ever running loose on the premises.

15. KINGSMILL knew that Clyde was not running loose on the premises.

16. Upon information and belief, KINGSMILL had actual knowledge that no credible information existed that Clyde was ever running loose on the premises.

17. In the May 13, 2014 letter from KINGSMILL to the Plaintiff, KINGSMILL included an addendum to its lease ("pet addendum") and demanded that the Plaintiff sign that addendum.

18. The pet addendum evidences a policy which fails to accommodate persons with service animals.

19. The pet addendum does not exempt service animals and persons with service animals from the standard requirements of pet ownership imposed by KINGSMILL.

20. KINGSMILL's demand that Plaintiff enter into an agreement which fails to set forth exemptions for service animals violates the Fair Housing Act.

21. In spite of the fact that KINGSMILL had actual notice that Clyde was not a "pet," but rather a service animal, the pet addendum required Plaintiff to admit and/or acknowledge that Clyde was a "pet" as opposed to a service animal.

22. In spite of the fact that KINGSMILL had actual notice that Clyde is a service dog and not a mere pet, KINGSMILL did not acknowledge this in the May 13, 2014 letter to Plaintiff.

23. KINGSMILL, at all times relevant, does not acknowledge that disability animals are not pets.

24. KINGSMILL, at all times relevant, has adopted no policy accommodating people with disabilities with service animals.

25. In response to the May 13, 2014, Plaintiff informed KINGSMILL that Clyde was never running loose and that Clyde was a service dog and not a pet.

26. In response to the May 13, 2014, Plaintiff informed KINGSMILL that she believed that she was being harassed because she had a service animal and informed KINGSMILL that if she was harassed in the future, she would seek legal counsel.

27. In retaliation against the Plaintiff for requesting that KINGSMILL reasonably accommodate Clyde, KINGSMILL began sending the Plaintiff legal bills for several hundred dollars.

28. The legal bills sent by KINGSMILL to Plaintiff resulted from KINGSMILL's failure to adopt a policy as to persons with disabilities with service animals and were, in essence, punitive to the Plaintiff for raising this issue with KINGSMILL.

29. KINGSMILL's legal bill to Plaintiff was consistent with KINGSMILL's failure to adopt a policy to reasonably accommodate people with service dogs and further consistent with a de facto policy to punish the Plaintiff for asserting her right to such reasonable accomodation.

30. On or about September 25, 2014, KINGSMILL sent the Plaintiff another letter claiming that Clyde was barking continually while the Plaintiff was away from her unit.

31. Clyde was not barking continually while the Plaintiff was away, and four neighbors have since acknowledged in writing that Clyde was not barking continually while the Plaintiff was away.

32. Upon information and belief, KINGSMILL had actual knowledge that no credible information existed that Clyde was barking continually while the Plaintiff was away.

33. In the September 25, 2014 letter from KINGSMILL to the Plaintiff, KINGSMILL included an addendum to its lease ("pet addendum").

34. In spite of the fact that KINGSMILL had actual notice that Clyde was not a "pet," but rather a service animal, the pet addendum included in the September 25, 2014 letter required Plaintiff to admit and/or acknowledge that Clyde was a "pet" as opposed to a service animal.

35. The inclusion of the "pet addendum" in letters to Plaintiff on two occasions was consistent with KINGSMILL's failure to adopt a policy to reasonably accommodate persons with service animals and consistent with a KINGSMILL'S policy of demanding that Ms. Greenwald acknowledge that her service animal was a pet and not a service animal.

36. In spite of the fact that KINGSMILL had actual notice that Clyde is a service dog and not a mere pet, KINGSMILL did not acknowledge this in the September 25, 2014 letter to Plaintiff.

37. In response to the September 25, 2014 letter, Plaintiff again informed KINGSMILL that Clyde was a service dog and not a pet and that Clyde was not barking continually while the Plaintiff was away.

38. In response to the September 25, 2014 letter, Plaintiff informed KINGSMILL that she believed that she was being harassed because she had a service animal and informed KINGSMILL that if she was harassed in the future, she would seek legal counsel.

39. In February of 2015, KINGSMILL posted a notice to quit on the Plaintiff's unit; this Notice to Quit cited as a reason for eviction, *inter alia*, Plaintiff's statement that she would seek legal counsel to enforce her rights if she continued to be harassed regarding her service dog.

40. GREENWALD provided Kingsmill with reliable verification of her disabilities and disability related need for the accommodation.

41. The Defendant KINGSMILL has interfered, coerced and intimidated GREENWALD in the exercise of her fair housing rights.

42. Plaintiff has been injured by Defendant's discriminatory housing practices and therefore Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602.

43. GREENWALD has retained the undersigned to represent her in this matter and has agreed to pay a reasonable fee for legal services.

**COUNT I - FAILURE TO REASONABLY ACCOMMODATE AGAINST KINGSMILL**

44. GREENWALD re-alleges and incorporates, by reference, the preceding allegations, as if fully set forth herein.

45. GREENWALD has a disability-related need to live with her service animal.

46. KINGSMILL has at all times relevant to this action had actual knowledge of GREENWALD's disabilities.

47. GREENWALD requested reasonable accommodation of GREENWALD's disabilities.

48. GREENWALD provided reliable verification of her handicap and disability-related need for an accommodation.

49. KINGSMILL has failed to grant such an accommodation in a reasonable time, and such failure constitutes a constructive denial of said accommodation request.

50. KINGSMILL's failure to modify its policies to accommodate for GREENWALD's disabilities is discriminatory and unlawful.

51. Such actions by KINGSMILL are in total and reckless disregard of Plaintiff's rights, and show total indifference to GREENWALD's disabilities.

52. The foregoing conduct and acts of KINGSMILL constitute discrimination against a person in violation of 42 U.S.C. § 3604(0(2), (0(3)(b), FHA, by discriminating on the basis of handicap in the provision of services or facilities in connection with such dwelling.

2:16-cv-11466-AC-SDD Doc # 1 Filed 04/24/16 Pg 8 of 10 Pg ID 8

53. Defendant, Kingsmill, though its conduct and acts described above, violated 42 U.S.C. § 3604(0, FHA, by refusing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford GREENWALD an equal opportunity to use and enjoy her dwelling.

54. Providing an accommodation to the pet rule so as to acknowledge a service animal as such, so that GREENWALD may live in her own residence within the KINGSMILL community with a service animal would not (1) result in substantial physical damage to the property of others, (2) pose an undue financial and administrative burden; or (3) fundamentally alter the nature of KINGSMILL's operations.

55. As a direct and proximate result of KINGSMILL's failure to accommodate, GREENWALD suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

56. The discriminatory conduct and actions of KINGSMILL were intentional, willful, and taken in blatant disregard of the GREENWALD's rights.

## COUNT II - RETALIATION IN VIOLATION OF 42 U.S.C. § 3617

57. GREENWALD re-alleges and incorporates, by reference, paragraphs 1 through 19, as if fully set forth herein.

58. GREENWALD requires the ability to live with her service animal in order to the same opportunity to enjoy her dwelling at KINGSMILL as any non-disabled resident.

59. KINGSMILL's acts and omissions set forth hereing exacerbated the symptoms of GREENWALD' s disabilities, humiliated her and caused her emotional distress.

60. KINGSMILL, through its conduct and actions described above, violated 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with GREENWALD in the exercise and enjoyment of her rights recognized under the FHA.

61. As a result of the threats and intimidation by KINGSMILL, GREENWALD has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

62. The discriminatory conduct and actions of KINGSMILL were intentional, willful, and taken in disregard of GREENWALD's rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff KAREN GREENWALD demands judgment against the KINGSMILL to ensure that discrimination in violation of the Fair Housing Act does not occur in the future, to enjoin DEFENDANT from discriminating against Plaintiff, and preventing discrimination to other persons based upon disability in the future as follows:

a) That the Court declares that the discriminatory housing practices of DEFENDANT as set forth above, violate the Fair Housing Act;

b) That the Court enjoin KINGSMILL from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to enjoy a dwelling; or purporting to condition such an accommodation on provision of any more information than the minimal amount of documentation needed to verify a disability-related need for the requested accommodation;

c)  That the Court order Defendant KINGSMILL to establish objective policies and procedures to permit an accommodation for a person with a disability;

d)  That the court order KINGSMILL to grant Plaintiff's requested accommodation, which is a modification of the pet rule that currently prevents or abridges Plaintiff from residing in her residence with a dog as a service animal,

e)  That the Court order an award of compensatory and punitive damages to GREENWALD against Defendant to compensate her for her actual damages and for the humiliation, embarrassment and emotional distress caused by Defendants' discriminatory actions;

f)  That the Court declare that the Defendants actions were willful and wanton and in reckless disregard of the Plaintiffs civil rights under law;

g)  Awards Plaintiff reasonable attorney's fees and costs incurred in bringing this action to enforce the Fair Housing Amendments Act;

h)  Grants such other relief as justice may require.

## DEMAND FOR JURY TRIAL

63. Plaintiff demands a jury trial for all issues so triable.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:   s/ Adam G. Taub
      Adam G. Taub (P48703)
      Attorney for Plaintiff
      17200 West 10 Mile Rd. Suite 200
      Southfield, MI 48075
      Phone:  (248) 746-3790
Dated: April 24, 2016                Email:   adamgtaub@clgplc.net